IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br>**DEWIN SANCHEZ-SERRANO,**<br>*Defendant*. | **CRIM. NO. 19-192 (DRD)** |

### UNITED STATES' SENTENCING MEMORANDUM

**TO THE HONORABLE COURT:**

The United States of America, by and through the undersigned attorneys, very respectfully files its "*Sentencing Memorandum*" in support of its recommendation of **120 months** of imprisonment to be followed by three (3) years of supervised release.

### I.   FACTUAL SUMMARY

October 8, 2018, at approximately 5:30AM, the defendant, Dewin SANCHEZ-Serrano, fired multiple shots at the Like Liquor Store and Restaurant in San Juan, Puerto Rico. At the time of the events, the defendant was serving a term of Federal Supervised Release for Criminal Case No. 12-620 (DRD). ECF No. 77 ¶ 7.

The investigation revealed that the defendant was involved in a fight inside the establishment and then left. *Id.* at ¶ 8.   On the way out of the door, he made a

statement in Spanish to the bouncers (or security guards) to the effect "*Alguien va a morir esta noche*" meaning "Somebody is going to die tonight". ECF No. 3-1 ¶ 4.

 

A few minutes later, the defendant returned with a pistol in his hand. He fired several shots in the air while standing on the street in front of the establishment and then went back inside. ECF No. 77 at ¶ 8.

 

The recovered surveillance video from the entrance of the restaurant shows the security guards observing something in the direction of the street seconds before the defendant re-enters the establishment, and then immediately crouching to the floor and running away consistent with someone covering from shots being fired.

Right after the security guards make a movement consistent with covering from shots, the video shows the defendant swiftly walking towards the entrance of the restaurant while loading what looks like a black pistol on his hands.

 

As soon as the defendant enters the restaurant, the security guards are seen rushing right after him and then crouching to the ground again in a movement consistent with covering from shots.

 

3

The defendant is then seen coming out of the establishment and arguing with the security guards outside, while still holding the pistol with his right hand and then seems to leave.

  

However, seconds later, the defendant is seen re-entering the restaurant while the security guards rush behind him once again.

 

Then, one last time, the video shows the defendant trying to re-enter the restaurant, still with the gun in his hand, when he is stopped at the door because an injured person was being carried outside.




The defendant is then seen standing outside watching as the victim is carried away, until he finally leaves, while still visibly holding the firearm with his right hand.




The recovered videos show the defendant entering and re-entering the establishment several times with a gun in his hand. The videos also show the security guards crouching to the floor in a movement consistent with covering from shots being fired. "On that night a person died, and four others were injured." ECF No. 77 at ¶ 8.

On September 30, 2022, the defendant pled guilty to the Indictment pursuant to a straight plea to the sole count of Possession of a Firearm and Ammunition by a Prohibited Person (Felon), in violation of Title 18, *United States Code*, Sections 922(g) and 924(a)(2). ECF No. 73.

## II.   PENALTIES AND GUIDELINE CALCULATIONS

The penalty for the offense charged in Count of the Indictment One (Felon in Possession of Firearm or Ammunition) is a term of imprisonment of **not more than ten (10) years**; a fine of not more than two hundred fifty thousand dollars ($250,000.00) and a term of supervised release of any term of years not more than three (3) years, in accordance with Title 18, *United States Code*, Section 3583(b)(2).

The Presentence Report (PSR) accurately reflects the facts of the case. Given his extensive criminal history, the defendant is in Criminal History Category IV, (ECF No. 77. at ¶ 34) thereby falling in a sentencing range of 30 to 37 months of imprisonment pursuant to a TOL of 15. (*Id*, ¶ 26).

This sentencing range does <u>not</u> accurately reflect the nature and circumstances of the offense or constitute an individualized assessment of the defendant's criminal history. A sentence within this range would <u>not</u> promote deterrence nor protect the

public from further crimes by this defendant. Accordingly, the Government strongly recommends a sentence of **120 months** of imprisonment for the reasons set forth below.

### III. ARGUMENTS IN SUPPORT OF SENTENCE RECOMMENDATION

   a. <u>Nature And Circumstances of The Offense - Defendant's Reckless Actions in Clear Disregard of Human Life Support the Recommended Sentence</u>

As clearly shown in the video and still images described and presented above, the defendant possessed a firearm and opened fire on the street and inside the establishment with the intent to cause harm to bystanders. His expression upon leaving the restaurant to get the firearm, the fact that he returns carrying a firearm, makes multiple entries into the location, fires multiple shots, and the fact that a person died from gunshot wounds that night, all show his clear intention of causing harm. Nonetheless, the Government does not have evidence that it was the defendant's bullets that caused the victim's death.

"The guidelines are simply 'the starting point and the initial benchmark' for crafting an appropriate sentence. *Citing Gall*, 552 U.S. at 49, 128 S.Ct. 586. As such, a sentencing court is not to presume that the GSR invariably sets the parameters of a reasonable sentence but must 'make an individualized assessment based on the facts presented.'" *United States v. Narvaez-Soto*, 773 F.3d 282, 288 (1st Cir. 2014). When imposing sentence, "the court may consider the manner in which the offense was committed even if the underlying conduct already is accounted for by an offense level adjustment" *Id.*

While the elements of the offense of conviction in this case could be easily met by the defendant simply possessing a firearm without ever removing it from his pocket or bag, the Court should evaluate the totality of the defendant's conduct. His actions went far and above simple possession. The defendant's reckless disregard for human life and the safety of dozens of people the night of October 8, 2018, support a sentence of **120 months** of imprisonment.

  b. <u>Defendant's Criminal History and Extensive Disciplinary Actions While Imprisoned Also Support a Sentence Above the Guidelines</u>

The defendant has a long history of encounters with the law, beginning when he was very young. ECF No. 77, ¶¶ 29-31, 37-44.

Instead of learning from his mistakes and making amends, the defendant has actually escalated by repeatedly committing crimes or engaging in conduct involving violence, aggressiveness, child abuse, domestic violence, or possession of firearms, (*Id.*) and has been punished with over a dozen discipline sanctions while imprisoned. ECF No. 77 ¶ 11.

The defendant has continuously demonstrated a clear disregard for authority and the law, with a history of eleven (11) arrests, and three (3) convictions for felonies involving threats, physical violence, and illegal possession of firearms, as detailed below. *Id.* at ¶¶ 29-31, 37-44.

- 04/25/2002 (Age 18) Convicted for Domestic Violence Art. 3.2, 3.1, sentenced in absence, for conduct involving physical violence, where he grabbed the victim by the neck, bite her face and threw her to the floor.

- 05/27/2006 (Age 22) Convicted for Domestic Violence Art. 3.2D, sentenced in absence for conduct involving a threat in front of his own daughter "If you don't give me my daughter, I'm going to kill you", and taking his daughter from her mother's arms by force.
- 08/12/2012 (Age 29) – Convicted for the same behavior charged in the instant case, Illegal Possession of a Spike Tactical Rifle Model ST-15, loaded with an extended 45-round capacity magazine in violation of Title 18, United States Code, Section 922(g)(1) in Criminal Case No. 12-620 (ADC), for which he is facing revocation proceedings due to the instant Indictment.

*Id*. at ¶ ¶ 29-31.

Furthermore, while imprisoned, the Bureau of Prisons has sanctioned the defendant in thirteen (13) different occasions between 2013 and 2019, for conduct involving either possession or use of drugs, possession of hazardous tools inside prison, or disrespecting or disregarding the authority. Of those, eight (8) were while imprisoned for the prior federal case, also involving the illegal possession of a firearm (12-260) and the remaining five (5) sanctions, were while he was detained pending trial for the instant case. *Id*. at ¶ 11.

c. Community-Based Factors

The First Circuit has recognized the value of community-based factors in determining a sentence. *See, e.g., United States v. Flores-Machicote*, 706 F.3d 16, 23 (1st Cir. 2013) ("[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence."). In imposing its sentence, this Court may take in consideration the problem of gun violence in Puerto Rico. *See, e.g., United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019).

The First Circuit has acknowledged the seriousness of gun-related violence in this District. *See United States v. Narvaez-Soto*, 773 F.3d 282, 286 (1st Cir. 2014) (describing "the [district] court's reasoned determination, predicated on its experience, that the incidence of violent crime—and, particularly, gun-related violent crime—is an acute problem in Puerto Rico"). Indeed, there is no doubt that "Puerto Rico is a hot spot for weapons." *United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019).

This Court is well aware of the illegal firearms problem in Puerto Rico. All too frequently, the residents of this District are bombarded with reports about firearms violence and murders in broad daylight. In 2019, firearm offenses constituted 11.1% of federal offenses prosecuted nationwide; they constituted 20.9% of offenses prosecuted in the District of Puerto Rico. See, https://www.ussc.gov/research/sourcebook/archive/sourcebook-2019, last visited February 8, 2023.

   d. The Need for Deterrence

The prevalence of gun violence in Puerto Rico, analyzed together with the circumstances of the offense, defendant's characteristics, and the need for adequate deterrence supports a sentence **of 120 months of imprisonment**. "[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence". *United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019) (quoting *United States v. Flores-Machicote*, 706 F.3d 16 (1st Cir. 2013). Higher sentences for gun-related offenses have a deterrent effect. *See United States v. Martinez,* 184 F. Supp. 3d 1209, 1238 (D.N.M.), *aff'd,* 660 F. App'x 659 (10th Cir. 2016)

("[R]esearch strongly indicates that increases in sentence length have at least some general deterrent effect—especially for criminals facing shorter sentences."); David S. Abrams, *Estimating the Deterrent Effect of Incarceration Using Sentencing Enhancements*, 4 Am. Econ. J.: Applied Econ. 32 (2012) (empirical study finding that increased sentences for gun-related offenses decrease certain gun violence).

A sentence of **120 months** would deter others from possessing illegal firearms while engaging in such dangerous behavior in blatant reckless disregard for public safety.

e. The Need to Protect the Public for Further Crimes By The Defendant

The need to protect the public from further crimes of the defendant also supports a sentence above the applicable guideline range. According to a 2019 study by the United States Sentencing Commission, firearms offenders recidivated at a higher rate than non-firearms offenders. See, U.S. Sentencing Commission, *Recidivism Among Federal Firearms Offenders* (June 2019) available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf, last visited February 8, 2023. This study also found:

- "Over two-thirds (68.1%) of firearms offenders were rearrested for a new crime during the eight-year follow-up period compared to less than half of non-firearms offenders (46.3%)".[1]

- "Firearms offenders recidivated more quickly than non-firearms offenders. Of the firearms offenders who recidivated, the median time from release to the first

---

1 *Id*. at p. 4.

recidivism event was 17 months. Comparatively, the median time from release to the first recidivism event for non-firearms offenders was 22 months."[2]

- "A greater percentage of firearms offenders were rearrested for serious crimes than non-firearms offenders. Of the firearms offenders who recidivated, assault was the most serious new charge for 29.0 percent, followed by drug trafficking (13.5%) and public order crimes (12.6%). Of the non-firearms offenders who recidivated, assault was the most common new charge for 21.9 percent, followed by public order crimes (19.4%) and drug trafficking (11.1%)."[3]

- "Firearms offenders have higher recidivism rates than non-firearms offenders in every Criminal History Category. The difference in recidivism rates between firearms and non-firearms offenders is most pronounced in Criminal History Category I, the lowest Criminal History Category, where firearms offenders recidivated at a rate approximately 12 percentage points higher than non-firearms offenders (45.0% compared to 33.2%)"[4].

- "Firearms offenders appear to desist from criminal activity later in life than non-firearms offenders—firearms offenders continued to recidivate at a high rate until reaching age 50 at the time of release from prison. Even after age 50, firearms offenders recidivated at nearly double the rate of non-firearms offenders in the same age group".[5]

## IV.  CONCLUSION

In the instant case the defendant possessed a firearm, fired shots in a public place with clear and blatant disregard for public safety and human life.

For the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; the United States recommends that this Court sentence defendant, Dewin SANCHEZ-Serrano,

---

[2] *Id*.
[3] *Id*.
[4] *Id*.
[5] *Id*. at p. 48.

to **120 months of imprisonment** to be followed by a term of three (3) years of supervised release.

**WHEREFORE**, for the foregoing reasons, the United States respectfully recommends that this Court sentence the defendant to a term of **120 months** of imprisonment, to be followed by a term of supervised release of **three (3) years**, which the Government submits is consistent with the Section 3553(a) factors.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 9th day of February 2023.

W. STEPHEN MULDROW
United States Attorney

*s/ Cristina Caraballo-Colón*
Cristina Caraballo-Colón
USDC-PR No. 300508
Assistant United States Attorney
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Telephone: (787) 766-5656
cristina.caraballo.colon@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the defendant.

*s/ Cristina Caraballo-Colón*
Cristina Caraballo-Colón
USDC-PR No. 300508
Special Assistant U.S. Attorney